## Case No. 6,181.

### HARVEY v. GRAND TRUNK RY. CO.

[2 Hask. 250.] [1]

Circuit Court, D. Maine.    Sept., 1878.

MEASURE OF DAMAGES—"LUMBER"—CARRIERS.

The measure of damages for not transporting unmanufactured lumber from a foreign country into the United States, intended for specific manufacture here by the owner, is the price that the same would bring at the place of delivery when so manufactured, less its cost including transportation, with interest from the time of the refusal to so transport the lumber.

Assumpsit for breach of a written contract by a carrier to transport lumber from Canada to the United States at a stipulated freight.

[1] [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

Tried upon the general issue. The verdict was for plaintiff [William Harvey] for $11,000. The case is now heard upon a motion by defendant for a new trial and that the verdict be set aside because the damages assessed are excessive.

Orville D. Baker, for plaintiff.
John Rand, for defendant.

FOX, District Judge. The defendant moves for a new trial on the ground that the damages are excessive. The writ presents two distinct causes of action. In one, the plaintiff claims to recover for breach of a written contract, made by him with defendant November 1, 1871, by which it contracted to convey for him lumber, posts, &c., from Arthabasca to Portland, from that date till May 1, 1872, at $34, gold, per car, and from May 1 to November 1, 1872, for $33 per car.

Relying upon this contract, the plaintiff purchased a large quantity of posts, about 15,000, and placed them along the line of the railroad at and near to Arthabasca station in the winter of 1871–72; and repeatedly afterwards demanded of the agent of the defendant to provide cars for the transportation of the posts to Portland, which were never furnished, the reply being "that the company would not allow them to carry cedar for posts, as they wanted all the cedar themselves." These posts were never transported to Portland, and nearly the whole value was lost to plaintiff, as he realized but two or three hundred dollars therefor. Upon this issue, the jury at the present term assessed the plaintiff's damages at $4,192.50.

The other claim presented by plaintiff in this suit was for a breach of duty by the defendant as a common carrier in not transporting 40,000 cedar posts from Lennoxville to Portland in the winter of 1873. The plaintiff in previous years had large quantities of posts and ties carried for him by defendant from Lennoxville to Portland, and relying on its continuing so to do, he procured the posts in 1872–73, many of which were hauled to the depot and vicinity, while some were turned into the Stary brook and River St. Francis, near by, and other lots were piled by the side of the highway leading to the depot. The aggregate of all the lots was in the vicinity of 40,000. It was a matter of controversy whether the whole were so placed as to have been tendered for transportation at Lennoxville; and from the finding of the jury, I conclude that in their view, not more than 25,000 were actually delivered in a suitable place for transportation by the road, so as to devolve upon the company the duty to carry the same to Portland. Upon this issue, the jury awarded as damages the sum of $6,807.50. The entire damages awarded amounted in the aggregate to $11,000.

The breach of both contracts having occurred in 1872 and 1873, the jury were at liberty to add to the damages sustained interest from the time of the breach; and the court may well infer, under all the circumstances, that they adopted this course, as by not doing so, they would not afford the plaintiff a full indemnity. To determine the grounds of the verdict, a discount of the interest, therefore, should be made from the amounts returned by the jury, which, if reckoned for the space of five years, would reduce the damages on the Arthabasca contract to $3,225, and on the Lennoxville claim to $5,225, or thereabouts. These sums are nearly in the proportion of three to five, and this may aid us in determining the number of posts, which, in the opinion of the jury, the defendant failed to transport under its obligations to the plaintiff.

There can be but little question that there were 15,000 delivered under the Arthabasca contract; not all landed directly at the station, but so near to the station, and at points along the road, which, by the practice and usage of the company has always been understood as the equivalent of Arthabasca, that the court can not hesitate to conclude that the jury held the defendants responsible for neglecting to transport this 15,000 from Arthabasca to Portland, under their written agreement so to do. 15,000 being the number, therefore, for which the damages were assessed at $3,225, in the same ratio, from the damages of $5,225, assessed on the Lennoxville claims, the jury probably estimated the number then tendered for transportation to have been about 25,000, excluding from their allowance, those at Stary brook and the St. Francis, as well as all upon the line of the highway.

I have adopted this theory, as I do not find any evidence to distinguish as to the damages sustained by the failure to transport from the one place or the other, excepting by the number of posts which were not forwarded. The loss on a car load, to be taken from either place, so far as appears, would be substantially the same, if not forwarded.

The entire damages for non-transportation being $8,460 without interest, it would appear that the jury estimated the plaintiff's loss, by the defendants' breach of contract, at a little over twenty-one cents per post. They must have found that he would have realized that sum as profit on each post delivered at Portland; and the question for the court to determine on this motion is, whether, upon the whole testimony, this sum is so much beyond what ought to have been allowed the plaintiff as to require the court, under the rules regulating motions for new trials, to set aside the verdict as excessive.

In considering this question, it is to be remembered that while the article to be taken to Portland was cedar posts and not manufactured ties, they were still posts intended for railroad ties, subject to duty, if imported as manufactured lumber; but which could be imported duty free if unmanufactured. The large quantity in connection with the size and

quality, as well as the testimony of every witness, proves conclusively that the purpose of the plaintiff was to obtain a market in this country for these articles where they would realize to him their full value when prepared for the use for which they were designed.

The evidence is, that all of the 15,000 at Arthabasca measured seven inches in diameter, as well as a large proportion of those at Lennoxville. The plaintiff testifies, that when manufactured into ties, he could have sold them at Portland at an average of fifty-five cents per tie. He gives as their cost, ten cents on the cars, and less than fourteen cents the cost of transportation. The expense of siding a post on two sides at the mill in Canada is stated by Wm. Harvey at four to five cents; but the slabs were claimed to be worth much more than that sum, as they could be made into pickets.

The jury were instructed to estimate the damages for the non-delivery of the posts at Portland; but that, as an element in determining this amount, they might consider the purpose for which the posts were to be brought here, their original cost with expense of transportation as well as what it would have cost to make them into ties here, and the amount for which they could have been sold as ties in this place.

Lorenzo Taylor, a witness of large experience in this branch of business in Portland, testified that in 1872–73, the market price of ties in Portland was thirty cents for those under five inch face; forty cents for five inch face; fifty cents for six inch face; sixty cents for seven inch face. That posts were a very different article from ties, and bore a very different price, and were worth in those years three and one-half cents an inch; that a man who got out a post suitable for a tie would make a tie of it because they were worth twice the money or nearly that; that posts suitable for ties are not to be bought; that a cedar post suitable for a tie would be made into a tie before it came here; that the men who sell posts are usually too sharp to send posts suitable for ties; that when he speaks of posts at three and one-half cents the inch, he refers to fence posts; that posts suitable for seven inch sleepers would be sold at same rate.

From this testimony, it is strongly urged that if these posts had been taken to Portland, the plaintiff could not have sold them for more than three and one-half cents per inch, and, therefore, if all had been seven inches in diameter, he would have received less than twenty-five cents per post; but in the opinion of the court, this testimony must be weighed in connection with all the other evidence in the cause, and especially with the evidence showing the very large number of the posts which the plaintiff intended to make into ties, and not to sell as posts.

In this lot there was a market value far beyond that which would attach to a small number of the same dimensions, as by the expenditure of a small sum, a post could be readily changed into a tie, in which state, as Taylor says, it would be worth nearly double what it was as a post. Such a lot of posts would never have been sold by a party in that condition in this market; but having received them free of duty, the owner could at once have taken measures to make them into ties, which was the undisputed purpose of the plaintiff. This capability of being so easily made available and productive of so large a sum, the plaintiff certainly was entitled to have the jury consider in fixing upon his loss, as it is clearly shown the plaintiff intended so to do; and from the conduct of the defendant, the court can not but conclude that it well understood that such was the intent of the plaintiff if he had received the posts at their place of destination. The plaintiff has clearly lost exactly what he could have gained if the defendant had performed its obligations which it had assumed, and this loss may well be ascertained by determining what, beyond question, he would have received for the article, if it had been delivered to him at Portland, and he had been permitted to deal with it as he intended to do, deducting therefrom all expenses which he would have incurred.

If the ties would have averaged fifty-five cents, as the plaintiff testifies, and which is supported by the testimony of Taylor, and we deduct therefrom their cost when delivered in Portland, twenty-four cents gold, there would remain thirty-one cents from which a further deduction should be made of sawing the slabs off the two sides to change them into ties. The cost of this change, from all the testimony, I judge would not have exceeded six or seven cents over and beyond the value of the slabs for pickets, and there would remain a profit of more than twenty-one cents, which the jury allowed the plaintiff.

Upon a careful examination of the whole case, I am satisfied that the jury have not allowed the plaintiff, by their verdict, more than he would in all probability have gained if the defendant had delivered the posts in Portland, as upon the evidence it was bound to do. Motion overruled. Judgment on the verdict.